Robert T. STEAD, Petitioner,

v.

**SECURITIES AND EXCHANGE COMMISSION, Respondent.**

No. 382–70.

United States Court of Appeals,
Tenth Circuit.

July 2, 1971.

Rehearing Denied Aug. 16, 1971.

Norman S. Johnson, Salt Lake City, Utah, for petitioner.

Walter P. North, Associate Gen. Counsel, Securities and Exchange Commission (Phillips A. Loomis, Jr., Gen. Counsel, Jacob H. Stillman, Asst. Gen. Counsel, Frederick L. White, Atty., Securities and Exchange Commission, with him on the brief), for respondent.

Before SETH, HOLLOWAY, and DOYLE, Circuit Judges.

SETH, Circuit Judge.

Robert T. Stead has petitioned this court, pursuant to section 25(a) of the Securities Exchange Act of 1934, to review an order of the Securities and Exchange Commission. The commission's order barred Stead from association with any broker or dealer, with the proviso that he could become employed in a supervised capacity after three months upon a showing that he would be adequately supervised. A memorandum opinion and order denying the petition of Stead for rehearing but granting Stead's request for a stay pending judicial review was entered.

In its findings and opinion, the commission found that Stead wilfully violated the registration provisions of section 5(a) and (c) of the Securities Act of 1933 in the offer, sale, and delivery of the common stock of Triumph Corporation for which no registration statement had been filed; in wilfully aiding and abetting violations by Babcock & Co. of the antifraud provisions of section 15(c) (1) of the Securities Exchange Act of 1934 which require a broker-dealer participating in a distribution of securities to give customers who purchase such securities from it written notification of the existence of its participation in the distribution; and in wilfully aiding and abetting violations by the firm of the recordkeeping provisions of section 17(a) of the Securities Exchange Act of 1934.

When Stead was first employed at the Salt Lake City office of Babcock & Co. in April 1967 he opened an account for "R & E Investment," which replaced an account for "Triumph Corporation," in the Ogden office. Prior to his employment with Babcock, Stead had spent some sixteen years in the brokerage business and had dealt with an R & E account at another firm. He had opened the R & E account at this prior firm at the request of Hugo Emery, president of Triumph Corporation. The only stock traded in all these accounts was stock in Triumph Corporation. The stock in the R & E accounts was thus in fact being distributed by an issuer, and since no registration statement was in effect its distribution was potentially in violation of the Securities Act of 1933.

In his defense, Stead argued that he made a reasonable effort to ascertain the status of this stock before handling it. Apparently he contacted Triumph Corporation's transfer agent and was told that the stock was "freely tradable." However, in examining all of the contacts Stead had with the R & E account, and with Hugo Emery, while with the prior firm and with Babcock, the commission concluded that Stead should have made a more thorough investigation before trading the Triumph stock through the R & E account.

The commission found that Babcock & Co. violated the antifraud provisions of section 15(c) (1) of the Securities Exchange Act of 1934 and Rule 15c1–6 thereunder by failing to give purchasers of Triumph stock from it a written notification of the existence of the firm's participation in the Triumph distribution and that Stead wilfully aided and abetted these violations.

The commission also found that Stead wilfully aided and abetted violations by Babcock & Co. of the recordkeeping provisions of the Securities Exchange Act of 1934. These violations occurred when the firm failed to record on Stead's account the receipt of securities delivered by Stead to the firm commencing on April 19, 1967. They also found they occurred when the firm carried a dollar balance in Stead's account as of May 31, 1967, at $22,937.00 when the true amount was $46,812.00. Finding that Stead knew or should have known of these errors, the commission concluded that he aided and abetted the violations because " * * * they involved deficiencies in his individual trading account with respect to matters that were subject to his control."

On this appeal Stead attacks the sufficiency of the evidence to support the commission's findings and urges that the imposed sanction is too severe.

As to the violation of registration provisions, Stead urges that he did make reasonable inquiry into the nature of the R & E account and the status of the Triumph stock and that he reasonably believed the transactions involving Triumph Corporation stock in the R & E account were exempt from the registration requirements of the Securities Act of 1933.

The record shows that the Triumph Corporation stock was being traded through an account at Babcock & Co. controlled by the president of Triumph Corporation. This was the "R & E" account. The record also shows that this was the only stock being traded in that account, and Stead testified that he was "suspicious" of Triumph's president. There was no registration statement filed for this stock. Stead had prior dealings with this stock in a similar account while working for another broker and had prior contacts with the corporation's president. From these circumstances the commission's finding that Stead knew or should have known that there was no registration is well supported by the evidence. The act of Stead in calling the transfer agent is obviously not a sufficient inquiry. There is ample evidence to support the finding of the commission on these questions and there is little doubt that Stead could have very easily discovered that the Triumph distribution involved the issuer and was therefore not exempt under section 4(1) of the Securities Act of 1933 from the registration requirements of section 5(a) and (c) of that Act.

As to his duty, see Hanly v. Securities & Exchange Comm'n, 415 F.2d 589 (2d Cir.); Berko v. Securities & Exchange Comm'n, 316 F.2d 137 (2d Cir.), and Rule 154 of the commission.

In his reply brief Stead argues that the transactions relative to the Triumph stock were exempt from the registration requirements because they were either dealer's transactions under section 4(3) or unsolicited broker's transactions under section 4(4). The question of the applicability of these two exemptions was not raised before the commission when it reviewed the initial findings of the Examiner. Section 25(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78y(a), which confers jurisdiction upon courts of appeals to review commission orders entered under the Exchange Act specifically provides that "no objection to the order of the Commission shall be considered by the court unless such objection shall have been urged before the Commission." See, Gilligan, Will & Co. v. Securities & Exchange Comm'n, 267 F.2d 461 (2d Cir.); Lile v. Securities & Exchange Comm'n, 324 F.2d 772 (9th Cir.). Accordingly, the question of these exemptions is not properly before this court and will not be considered on this appeal.

There is ample evidence to support the findings of the commission in connection with the recordkeeping violation. When Stead joined the Babcock firm, he delivered his own securities to the company for purposes of future sale. These securities were not entered in Stead's account until after their sale, and he was aware of that situation. In some instances of sale, however, no entry was made to reflect receipt of a security, sale of which was recorded thereby giving the misleading appearance of a short sale. A reconstructed account showed substantial differences in dollar balances and securities received in Stead's account from time to time. The fact that Stead did not exercise control over the books of the firm does not excuse him from watching over and preventing irregularities in his own account. He did receive requests from the auditors for confirmation of stated balances. The commission's finding that Stead aided and abetted a violation of the recordkeeping provisions of section 17(a) of the Securities Exchange Act of 1934 is supported by substantial evidence. As to the "wilful" aspect of the recordkeeping violation it was sufficient

to show Stead knew that the securities initially deposited were not recorded, and as to the dollar balances the receipt of requests for confirmation with a failure to inquire was also sufficient. See, Tager v. Securities & Exchange Comm'n, 344 F.2d 5 (2d Cir.).

■ Finally, Stead argues that the sanctions imposed by the commission constitute a penalty rather than a remedy in the public interest as required by the Securities Exchange Act. The commission barred Stead from being associated with any broker or dealer for three months. After that time he can be so associated but only in a supervised capacity and upon an appropriate showing that he will be adequately supervised. Stead contends that the effect of this sanction is to put him out of the securities business, especially since he now is managing his own brokerage firm which he opened after the instant proceedings had begun. While we appreciate the impact of the sanction imposed by the commission, we are also mindful of the fact that the commission and not the court has been assigned primary responsibility by Congress for the protection of investors in securities. In Associated Securities Corp. v. Securities & Exchange Comm'n, 293 F.2d 738 (10th Cir.), we considered the standards for review as to the facts and we noted as to sanctions:

> "The balancing of private detriment against public harm requires the fair and proper exercise by the Commission of its discretionary powers. * * * [A]nd the exercise by the Commission of its discretionary powers will not be upset by the courts except for cogent reasons."

We do not find, as Stead urges, that his management of a brokerage firm, opened while the proceedings were pending, or any other factor present, justifies this court in upsetting the sanction portion of the commission's order.

Affirmed.