Richard B. BERDAHL, Petitioner,

v.

SECURITIES AND EXCHANGE COMMISSION, Respondent.

No. 77–1201.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 14, 1977.

Decided March 22, 1978.

---

Edward A. Zimmerman, Edina, Minn., for petitioner.

Paul Gonson, SEC, Washington, D. C., Harvey L. Pitt, Gen. Counsel, John M. Mahoney, Sp. Counsel and Edward B. Horahan, III, Atty., Washington, D. C., on brief, for respondent.

Before LAY, BRIGHT and HENLEY, Circuit Judges.

HENLEY, Circuit Judge.

Richard B. Berdahl petitions this court for review of a final order of the Securities and Exchange Commission (the "Commission") barring him from association with any broker or dealer, provided that after nine months he may apply to the Commission for permission to become associated with a broker or dealer in a nonsupervisory capacity. We deny the petition for review.

On July 3, 1971 Midland Securities Corporation ("Midland") became registered with the Commission as a broker-dealer in securities. Petitioner, who had founded Midland, became its registered principal in October, 1971. During this period he also served as Midland's president. In November, 1971 petitioner became Chairman of Midland's Board of Directors, a position which he held at all times relevant hereto. At the same time Bruce L. Hankerson, also a subject of these proceedings before the Commission, became Midland's new president.

It is not seriously disputed that petitioner played an active role in the development and operation of Midland, although, as will be seen, there is considerable dispute about his involvement in particular transactions and occurrences. Petitioner presided over Board meetings which occurred "at least once a month, [and] most times once a week." At these meetings members discussed, among other things, the hiring of employees and proposed underwritings. In addition, Board members often discussed among themselves, although not necessarily at official meetings, compliance and bookkeeping procedures.

Petitioner was involved with Midland's day-to-day operation. When Midland had problems with its checking account, petitioner induced a bank official to extend to Midland a $35,000.00 line of credit. He was also involved with hiring personnel, insuring that the Commission was informed of Midland's changes of officers and addresses, receiving monthly reports of the firm's capital position, as well as receiving periodic reports on varying subjects from Midland's officers and employees.

Midland's troubles with the Commission began in the fall of 1972 when a Commission investigation revealed numerous bookkeeping delinquencies and other violations. Subsequent investigation led to the Commission instituting this administrative enforcement proceeding.

After a three-day hearing the administrative law judge ("ALJ") found that petitioner had violated, or aided and abetted the violation of, several provisions of the securities laws and ordered petitioner barred from associating with any broker or dealer, provided that after nine months he might apply to the Commission for permission to become associated with a broker or dealer in a nonsupervisory capacity.

Petitioner timely appealed this decision to the Commission, which found that petitioner had violated the securities laws in the following particulars: (1) he wilfully violated antifraud provisions of the federal securities laws in connection with the offering of securities of Port Industries, Inc.; (2) he failed reasonably to supervise employees subject to his supervision in regard to violations of margin requirements; and (3) he had wilfully aided and abetted Midland's failure timely to file its 1971 annual report. The Commission affirmed the ALJ's imposition of the sanction.

In his petition for review, petitioner challenges the sufficiency of the evidence on the three above-mentioned violations. He also contends that the ALJ erred in allowing him to be represented by a co-respondent, Robert Knutson, at the administrative hearing. Finally, he asks this court to modify the Commission's sanction on the ground that it is too severe. We discuss these claims seriatim.

### A. Sufficiency of the Evidence.

#### 1. The Port Offering.

Beginning in June, 1972 Midland served as the underwriter for an offering of the securities of Port Industries, Inc. ("Port"), a small company engaged in real estate development. At the time of the offering Port had never earned any money and did not expect to be able to pay cash dividends in

the foreseeable future. The Port offering circular, dated June 6, 1972, included the following language on the first page:

The proceeds from this offering will be held in escrow by Marquette National Bank of Minneapolis, and in the event that 93,750 (75%) of the shares offered hereby are not sold within 120 days of the date hereof, all amounts paid by purchasers will be refunded promptly.

In furtherance of this escrow account arrangement, Midland entered into an escrow impoundment agreement with Port and the Marquette National Bank. The agreement provided in pertinent part:

All proceeds received from the sale of the securities subject to this Impoundment Agreement on or after the date hereof shall be paid to the Impoundment Agent within two business days from the date of sale and deposited by Impoundment Agent in an escrow account. During the term of this Impoundment Agreement, the Issuer and Underwriter shall cause all checks received by them in payment for such securities to be either payable to the Impoundment Agent or endorsed forthwith to the Impoundment Agent.

On June 22, 1972 Midland began to receive proceeds from the Port offering. These proceeds were not placed in the escrow account as the offering circular had promised; instead, the proceeds were deposited in Midland's own accounts. Once placed in these accounts, the proceeds were used to finance Midland's operation. It was not until the latter part of July that Midland made its first attempt to place the Port offering proceeds in the escrow account.[1]

The ALJ found that Midland's failure promptly to escrow the Port offering proceeds violated the antifraud provisions of § 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a), § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5 thereunder, 17 C.F.R. § 240.10b–5, and § 15(c)(2) of the Securities Exchange Act of 1934, 15 U.S.C. § 78o (c)(2), and Rule 15c2–4 thereunder, 17

1. The following table reflects the transactions during the one-month period beginning June 22, 1972:

| Date | Amount Received From Port Offering by Midland | Amount from Port Offering Accumulated | Amount Deposited by Midland to Escrow Account at Marquette National Bank | Midland's Combined Bank Balance Plus Petty Cash (Deficit) |
|---|---|---|---|---|
| 1972 | | | | |
| June 22 | $ 3,700.00 | $ 3,700.00 | 0 | $ 9,842.20 |
| June 23 | 14,800.00 | 18,500.00 | 0 | 42,541.76 |
| June 26 | 44,906.98 | 63,406.98 | 0 | 59,245.06 |
| June 27 | 10,675.00 | 74,081.98 | 0 | 64,345.07 |
| June 28 | 12,216.02 | 86,298.00 | 0 | 74,375.65 |
| June 29 | 14,744.90 | 101,042.00 | 0 | 97,390.90 |
| June 30 | 20,225.00 | 121,267.90 | 0 | 108,825.99 |
| July 3 | 14,713.12 | 135,981.02 | 0 | 121,448.99 |
| July 5 | 5,600.00 | 141,581.02 | 0 | 112,114.49 |
| July 6 | 16,719.78 | 158,300.80 | 0 | 116,778.16 |
| July 7 | 12,500.00 | 170,800.80 | 0 | 115,712.21 |
| July 10 | 10,000.00 | 180,800.80 | 0 | 135,782.21 |
| July 11 | 12,140.30 | 192,941.10 | 0 | 123,326.91 |
| July 12 | 8,400.00 | 201,341.10 | 0 | 151,226.57 |
| July 13 | 3,725.00 | 205,066.10 | 0 | 158,588.99 |
| July 14 | 12,000.00 | 217,066.10 | 0 | 154,160.53 |
| July 17 | 16,087.50 | 233,153.60 | 0 | 138,227.28 |
| July 18 | 800.00 | 233,953.60 | 0 | 134,989.81 |
| July 19 | 1,400.00 | 235,353.60 | 0 | 115,547.38 |
| July 20 | 77,250.00 | 312,603.60 | 0 | ( 26,037.92 ) |

C.F.R. § 240.15c2–4. The ALJ further found that petitioner had wilfully aided and abetted these violations. The Commission affirmed.

Petitioner contends that the Commission order must be reversed because there was no showing of scienter in regard to his involvement with the Port offering escrow violations. He relies on *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976), where the Supreme Court held that scienter is a necessary element in a private cause of action brought under § 10(b) and Rule 10b–5. The Commission responds that the *Hochfelder* rationale should not be applied to Commission disciplinary actions brought pursuant to § 15 of the Securities Exchange Act of 1934, 15 U.S.C. § 78o.

 On the record before us, we need not decide whether the Commission must prove scienter in a disciplinary proceeding[2] alleging violations of § 10(b) and Rule 10b–5,[3] because, even if such a showing is required, the Commission adduced sufficient evidence to meet that standard.

It is conceded that petitioner was aware of the escrow provision in the Port offering circular and that he was also aware of the terms of the impoundment agreement. The crux of petitioner's argument is that he was wholly unaware of his employees' failure to place the funds in the escrow account. The record belies this argument.

At the hearing, James Ehlen, who was the back office manager at Midland during the period of the Port offering, testified that he "bugged" petitioner about the failure to escrow "a couple of times," although it is not clear precisely when these instances occurred.[4] It is, however, abundantly clear that petitioner knew of the escrow problem no later than July 20, 1972. On that date, he wrote a check transferring $100,000.00 from Midland's own account to the escrow account. Despite this knowledge, however, the record indicates that petitioner took no action to insure that the escrow violations would not continue. As a result, during a six-day period ending on July 24, Midland deposited an additional $64,000.00 of Port offering proceeds in its own account.[5] His intentional and knowing acquiescence in the continuation of this fraudulent practice constitutes a sufficient showing of scienter.[6]

---

2. In addition, we need not decide whether the showing of "wilfullness" heretofore required in Commission disciplinary proceedings, *see Wasson v. Securities and Exchange Commission*, 558 F.2d 879, 887 (8th Cir. 1977), differs in any meaningful way from proof of scienter. *See generally Arthur Lipper Corp. v. Securities and Exchange Commission*, 547 F.2d 171, 180–81 (2d Cir. 1976); *reh. denied*, 551 F.2d 915 (2d Cir. 1977), *cert. denied*, —— U.S. ——, 98 S.Ct. 719, 54 L.Ed.2d 752 (1978).

3. We note that liability for the escrow violations in this case was also predicated on § 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a). One court has held that no showing of scienter is required under this section. *See Securities and Exchange Commission v. World Radio Mission, Inc.*, 544 F.2d 535, 541 n. 10 (1st Cir. 1976). In view of our disposition of this case, we have no occasion to determine whether the standard of proof under § 17(a) differs from that required under § 10(b) and Rule 10b–5.

4. Of course, the mere fact that Ehlen bugged petitioner a "couple" of times indicates that petitioner took no action to correct the escrow problem after Ehlen's first warning.

5. Indeed, had it not been for these deposits, the $100,000.00 check written by petitioner would not have cleared the bank, as it eventually did on July 26, 1972.

6. We decline to become embroiled in a semantic controversy over the varying shades of meaning of such terms as "intentional," "wilful," "deliberate," or "knowing," for we are of the view that petitioner's conduct was sufficiently purposive to come within the ambit of antifraud liability described by the Supreme Court in *Hochfelder*.

And we note that, at the very least, petitioner's conduct in regard to the escrow violations was grossly reckless, a level of culpability which many courts have held to satisfy the *Hochfelder* scienter requirement. *See, e. g., Rolf v. Blyth, Eastman Dillon & Co.*, 570 F.2d 38 (2d Cir. 1978); *Sanders v. John Nuveen & Co.*, 554 F.2d 790 (7th Cir. 1977); *Sundstrand Corp. v. Sun Chemical Corp.*, 553 F.2d 1033 (7th Cir.), *cert. denied*, 434 U.S. 875, 98 S.Ct. 225, 54 L.Ed.2d 155 (1977); *Bailey v. Meister Brau, Inc.*, 535 F.2d 982 (7th Cir. 1976); *Steinberg v. Carey*, [1977–78 Transfer Binder] Fed. Sec.L.Rep. (CCH) ¶ 96,215 (S.D.N.Y.1977); *Stern v. American Bankshares Corp.*, 429 F.Supp. 818 (E.D.Wis.1977); *Securities and Ex-*

### 2. Margin Violations.

■ The evidence showed that during September and October, 1972 Midland violated § 4(c)(2) of Regulation T, 12 C.F.R. § 220.4(c)(2), in at least twenty-five instances by failing to cancel securities transactions of its customers who had failed to pay for securities within seven business days of purchase, as required by the regulation. Again, petitioner does not dispute the existence of the underlying violations, but contends that the evidence was not sufficient to show his involvement therein.

The violations at issue were largely due to one salesman, a Mr. White. The record discloses that petitioner and Hankerson were aware of these violations and met frequently with White in an effort "to get him cleaned up." These efforts failed and the violations continued. Having undertaken to supervise White's work with respect to the Regulation T violations, petitioner had an obligation to do more than announce a policy that salesmen should be careful to avoid Regulation T problems, where the circumstances indicated that more specific and self-executing procedures should have been initiated. *See Sutro Bros. & Co.,* 41 S.E.C. 443, 462 (1963). We find substantial evidence on the record as a whole to support the determination that petitioner failed reasonably to supervise his employees with regard to the Regulation T violations, in violation of § 15(b)(4)(E) of the Securities Exchange Act of 1934, 15 U.S.C. § 78*o* (b)(5)(E).

### 3. Late Filing of Annual Report.

Securities and Exchange Rule 17a–5(a), 17 C.F.R. § 240.17a–5(a), as then in effect, required brokers or dealers to file an annual report of financial condition with the Commission within forty-five days of the close of their fiscal year. The annual report of Midland's financial condition for the fiscal year ending November 30, 1971 was due to be filed on January 14, 1972. The report was not filed until January 28, 1972.

■ Petitioner concedes that the report was filed late and that he and Knutson "handled" the filing. He contends, however, that he had a good-faith, reasonable belief that the Commission had granted Midland an extension of time in which to file the report. This belief was apparently based on the representation of Midland's accountant, a Mr. Harding, that he had telephoned a Mr. Froehlich in the Commission's Chicago regional office and that Froehlich had granted an oral extension of time. Harding's testimony at the hearing indicated, however, that Froehlich had told him that a request for an extension "would be a proper request." In addition, by letter to the Commission dated January 13, 1972, the day before the annual report was due, Hankerson formally requested an extension of time on behalf of Midland. The letter did not purport to confirm, nor did it refer in any way to, any previous understanding about an extension. The written request was promptly denied by the Commission. On this record, we conclude that there is substantial evidence to support a determination that petitioner did not have a reasonable belief that a valid extension had been given.[7]

### B. Representation by Co-Respondent.

■ Petitioner next contends that the ALJ erred in allowing petitioner to be represented by a co-respondent, Mr. Knutson, at the hearing. At the time of his appeal to the Commission, petitioner was represented by another attorney, but this contention was not raised before the Commission.[8]

---

change Commission v. Bausch & Lomb, Inc., 420 F.Supp. 1226 (S.D.N.Y.), aff'd, 565 F.2d 8 (2d Cir. 1977); Coleco Industries, Inc. v. Berman, 423 F.Supp. 275 (E.D.Pa.1976), aff'd in part, 567 F.2d 569 (3d Cir. 1977); McLean v. Alexander, 420 F.Supp. 1057 (D.Del.1976). But cf. Securities and Exchange Commission v. American Realty Trust, 429 F.Supp. 1148 (E.D. Va.1977).

7. We note that, if petitioner actually believed that a valid extension had been given, he has advanced no reason why Midland felt compelled to write to the Commission on January 13 seeking to have an extension granted.

8. Prior to the Commission's decision to review the ALJ's initial decision, petitioner's second counsel wrote a letter to the Commission sug-

Because this contention was not presented to the Commission and because petitioner has failed to show any reasonable ground for his failure to do so, this issue is not properly before us on this petition for review. *See* 15 U.S.C. § 78y(c)(1); *Stead v. Securities and Exchange Commission,* 444 F.2d 713, 716 (10th Cir. 1971), *cert. denied,* 404 U.S. 1059, 92 S.Ct. 739, 30 L.Ed.2d 746 (1972); *Pennaluna & Co. v. Securities and Exchange Commission,* 410 F.2d 861, 870 (9th Cir. 1969), *cert. denied,* 396 U.S. 1007, 90 S.Ct. 562, 24 L.Ed.2d 499 (1970); *Gearhart & Otis, Inc. v. Securities and Exchange Commission,* 121 U.S.App.D.C. 186, 189, 348 F.2d 798, 801 (1965); *Lile v. Securities and Exchange Commission,* 324 F.2d 772, 773 (9th Cir. 1963); *Barnett v. United States,* 319 F.2d 340, 345 (8th Cir. 1963); *Gilligan, Will & Co. v. Securities and Exchange Commission,* 267 F.2d 461, 468 (2d Cir.), *cert. denied,* 361 U.S. 896, 80 S.Ct. 200, 4 L.Ed.2d 152 (1959).

### C. The Propriety of the Sanction.

Petitioner's final contention is that the sanction imposed by the Commission is too severe and unwarranted on these facts, and that we should, accordingly, set aside or modify that sanction. Petitioner relies on the Second Circuit's recent decision in *Arthur Lipper Corp. v. Securities and Exchange Commission,* 547 F.2d 171 (2d Cir. 1976), *reh. denied,* 551 F.2d 915 (2d Cir. 1977), *cert. denied,* —— U.S. ——, 98 S.Ct. 719, 54 L.Ed.2d 752 (1978). In that case, the court held that an appellate court can modify a Commission sanction when it finds the sanction to be too severe.

■ Even if we were to accept petitioner's premise that we have the power to modify a Commission sanction which we deem to be too severe, (*but see Butz v. Glover Livestock Comm'n Co.,* 411 U.S. 182, 93 S.Ct. 1455, 36 L.Ed.2d 142 (1973)), we are unable to accept his conclusion that we should exercise that power on the facts presented here.

gesting a possible conflict of interest between petitioner and Knutson. The question was not, however, pursued in petitioner's brief before

The Commission has charged, and has proven by substantial evidence on the record as a whole, that petitioner was responsible for serious violations of the securities laws. The Commission could reasonably have concluded that protection of the public interest required barring petitioner from association with a broker or dealer, with the right to reapply for a nonsupervisory position after nine months.

Accordingly, the petition for review is denied.

the Commission. Accordingly, the contention was not properly presented to the Commission.