MILLER, Judge.
This case involves (1) an appeal (No. 77— 2208) from the district court’s dismissal[1] of appellant’s complaint alleging jurisdiction under 28 U.S.C. § 1331(a) or, alternatively, 5 Ú.S.C. §§ 701-06 (Administrative Procedure Act) and seeking an order requiring the Securities and Exchange Commission (“SEC”) to stay (pending SEC’s consideration of his appeal) a sanction imposed by the New York Stock Exchange (“NYSE”) permanently barring appellant from employment in any capacity with any member or member organization; and (2) a petition to this court (No. 78-1022) filed January 10, 1978, under section 25(a) of the Securities Exchange Act (“Act”) seeking review of the SEC’s order of November 23, 1977, denying a stay of the NYSE sanction.[2]
BACKGROUND
At the time of appellant’s defalcations, he was a vice president and registered account representative with Dean Witter & Co., Inc. (“Dean Witter”), a broker and dealer in securities registered with the SEC and a member of the NYSE, employed in Dean Witter’s Chicago office. He had been in the securities business as a salesman for some twenty-six years and had been a vice president of Dean Witter for about seven years. In January of 1975, appellant was assigned responsibility for the account of Mrs. Lillian Park, an 80-year old patient in a nursing home, whose nephew, Harold Burwick, represented her. Due to a clerical error, $10,000 in school district bearer bonds purchased by another customer were posted to Mrs. Park’s account, and the January account statement sent by Dean Witter to *390 Burwick so disclosed. Burwick called appellant about this, and appellant said he would take care of it. However, the bonds continued to show up in Mrs. Park’s monthly account statements. Finally, in June, appellant requested Dean Witter’s New York office to deliver the bonds to the Chicago office. When they arrived near the end of June, appellant, without authority, put them in his safety deposit box. He also requested the firm’s cashier to issue a check to Mrs. Park’s order for $162.50, representing six months’ interest on the bonds which had been erroneously posted to her account. He endorsed Mrs. Park’s name on the check without her knowledge or that of Burwick. He then gave the check to his brother-in-law as a gift for his nephews. The brother-in-law added his endorsement to the check and cashed it. The bonds remained in appellant’s safety deposit box until December 3, 1975, when he presented them for payment at a Chicago bank and received a check for $10,162.50, which he endorsed and deposited to his personal brokerage account at Dean Witter.
During the annual audit of Dean Witter in December of 1975, the double endorsement on the $162.50 check was routinely questioned, and Burwick advised that the endorsement (which appellant had made) was not that of Mrs. Park. This was brought to the attention of the vice president for operations of Dean Witter’s Chicago office, who then discovered that appellant had requested delivery of the bearer bonds and had signed the delivery ticket. Appellant was contacted in Florida, where he was vacationing, and he flew back to Chicago the following day “to straighten up the matter.” He borrowed some money from his bank and repaid the misappropriated sums to Dean Witter officials. At first he denied that he was solely responsible, alleging that he “was taken in” by Burwick, who forged Mrs. Park’s name on the $162.50 check and who had agreed to split the proceeds from the bonds. However, he eventually admitted his personal wrongdoing. On January 8, 1976, he was formally discharged by Dean Witter. He then contacted a longtime friend who was the president of Loewi and Co., Inc. (a registered broker and dealer in securities registered with SEC and a member of the NYSE), which hired him on January 16, 1976. His application for qualification as a registered representative with Loewi and Co., Inc. was “conditionally approved” on January 26, 1976, thus:
This approval is given subject to the outcome of the Exchange’s investigation into the circumstances surrounding Mr. Allen’s [sic] termination from Dean Witter & Co., Inc. This may result in disciplinary action being taken against him under Rule 345.
Upon being advised by Dean Witter that appellant had been discharged, the NYSE undertook an investigation. Approximately a year later, on January 28, 1977, after its investigation had been completed, formal proceedings were held before a NYSE hearing panel, which found that appellant had misappropriated bonds from a customer’s account, misappropriated funds from a customer’s account, and endorsed a customer’s name on a check issued to the customer— without the knowledge or permission of the customer. By a 2-1 majority, the panel voted that appellant “be permanently barred from employment in any capacity with any member or member organization.” (The minority panelist felt that a $15,000 fine and six months’ suspension was the proper sanction.) The panel’s decision was appealed to the NYSE board of directors which, on November 3, after a hearing, upheld both the findings and sanction. On November 11, the NYSE sent a certified copy of its record to the SEC. On November 9 (obviously in anticipation of that action), appellant appealed the NYSE decision and also sought a stay of the sanction pending the results of his appeal. The stay was denied by the SEC on November 23.
OPINION

Jurisdiction of district court (Appeal No. 77-2208)

Appellant argues that the district court erred in holding that it was precluded from *391 jurisdiction under 28 U.S.C. § 1331(a) by 15 U.S.C. § 78y(a)(l).[3] He asserts that the “duty of the SEC was to preserve the status quo and grant a stay” pending its decision on the merits; that its failure to do so was an abuse of discretion which has resulted in loss of his “right to earn his livelihood working at the occupation in which he has spent his entire working life”; and that he is being deprived of this right “solely by the action of the private corporation, the NYSE.”
The Government points out that prior to the 1975 amendments to the Act there was no SEC review of NYSE disciplinary proceedings; that, by enacting 15 U.S.C. § 78s(d)(2),[4] Congress provided for such review, but “concluded that initiation of such review . . . should not operate as a stay of the exchange’s action unless the Commission expressly orders otherwise”; and that for appellant to “successfully invoke the jurisdiction of a district court to interfere in a Commission administrative proceeding, he must demonstrate that the Commission has ‘so grossly exceeded its powers as to have, in effect, flouted the will of Congress.’ M. G. Davis & Co. v. Cohen, 369 F.2d 360, 363 (C.A. 2, 1966).”
We are persuaded by the Government’s argument. Authority for the SEC to “summarily” determine the question of a stay demonstrates the breadth of discretion granted by Congress, and we are unable here to detect any flouting of the will of Congress or other abuse of discretion — particularly in view of expedited action (within two weeks) by the SEC on appellant’s petition for a stay and (within three and a half weeks) on appellant’s renewed petition, along with no showing of inordinate delay by the SEC in considering the merits of the case. At oral hearing, counsel for the Government stated that a decision was expected around May 15, 1978. Compare Arthur C. Lipper Corp. v. SEC, 547 F.2d 171, 184 (2d Cir. 1976). The sanction of which appellant complains, although understandably a hardship, is one to which he voluntarily subjected himself (in the event he violated NYSE rules) when he signed his application and received conditional approval for employment with Loewi and Co., Inc. Finally, rather than placing the blame for loss of his job as a securities salesman on an alleged abuse of discretion by the SEC, appellant should look to his own admitted misappropriation of a customer’s funds and securities and his admitted forgery of a customer’s name on an interest check. Although in his defense before the hearing panel of the NYSE appellant stressed the “Full Disclosure Volunteered By Him,” the record indicates that the “hot breath” of an in-house investigation is what prompted the disclosure. United States v. Lustig, 163 F.2d 85 (2d Cir. 1947).
Appellant’s argument that the SEC has abused its discretion in failing to maintain the status quo by granting a stay appears to rest on his assertion that he has *392 been left “dangling in suspension” and that this is not required for protection of the investing public. He also complains that the sanction (permanent bar from employment in any capacity with any member firm) imposed by the NYSE rests on the determination of a stockbroker hearing panel that he engaged in conduct “inconsistent with just and equitable principles of trade” in violation of NYSE Rule 345(c)(1), “with no provision for a stay pending application for review to the Commission.” However, as noted above, the hearing panel’s decision was appealed to the board of directors of the NYSE which upheld both the findings of the panel and the sanction imposed.[5] We are satisfied that the procedural safeguards covering national securities exchanges and.the opportunity for review by the SEC under 15 U.S.C. § 78f(d), subject to its discretionary stay of sanctions, satisfy the requirements of due process under the Fifth Amendment. See Todd & Co. v. Securities & Exchange Commission, 557 F.2d 1008, 1014 (3d Cir. 1977). Also, we do not believe a court should try to outguess the expertise of the administrative agency in determining when protection of the investing public requires that a stay of sanctions be denied. As to protection of the investing public here, we are persuaded by the Government’s response that (1) the SEC had before it, at the time of its consideration of the petitions for stay, the certified NYSE record, which disclosed that appellant had misappropriated a customer’s funds and securities and had forged a customer’s name, and (2) appellant’s “facile excuse” (note 5, supra) “provided more than a sufficient basis for the Commission’s determination that the public interest required the NYSE sanction to remain in place.”[6] In view of specific legislation (15 U.S.C. § 78y(a)(l)) covering appeals from SEC actions, we do not believe the Administrative Procedure Act can be relied upon for subject matter jurisdiction. Caiifano v. Sanders, 430 U.S. 99, 105, 97 S.Ct. 980, 984,. 51 L.Ed.2d 192 (1977) (“the better view is that the APA is not to be interpreted as an implied grant of subject matter jurisdiction to review agency actions”).
The district court’s dismissal of appellant’s action was not erroneous.

Reviewability of SEC order denying petition for stay of sanction pending SEC review of disciplinary action by NYSE (Appeal No. 78-1022)

Appellant argues that 15 U.S.C. § 78y(c)(2)[7] “expressly makes denial of a stay [by the SEC] an independent grant of appellate jurisdiction to this Court.” Citing Abbott Laboratories v. Gardner, 387 U.S. 136, 149-54, 87 S.Ct. 1507, 1515-18, 18 L.Ed.2d 681, 692-94 (1967), he states that the Supreme Court has endorsed interlocutory action under the Administrative Procedure Act in a case such as this, where (1) the issues are overwhelmingly legal, (2) the *393 agency action has an immediate and substantial impact on the complaining party, and (3) action by the court will not delay or impede effective enforcement of the Act.[8] However, 15 U.S.C. § 78y(c)(2) relates to stay of a final order or rule, based on a petition filed under 15 U.S.C. § 78y(a)(l), supra note 3. Obviously, the SEC’s order of November 23,1977, is not a final order; nor is the SEC order of March 6, 1978, denying a renewed petition for stay filed February 10, 1978. Appellant vigorously maintains that the SEC order denying a stay is “ripe” for judicial review. Perhaps so, but, Congress has not seen fit to grant this court jurisdiction to review an interlocutory order of the SEC denying a request for a stay pending its consideration of a case on the merits. Cf. United States v. Georgia Pacific Corp., 562 F.2d 294, 296 (4th Cir. 1977).
Accordingly, we hold that the SEC order denying appellant’s petition for stay of sanction is not, in the absence of extraordinary circumstances not here present, reviewable by this court.
The Government maintains that even if the SEC’s denial order were reviewable, the principal grounds[9] cited by appellant were not raised before the SEC and therefore, may not be considered by this court (15 U.S.C. § 78y(c)(l)). Stead v. Securities & Exchange Commission, 444 F.2d 713, 716 (10th Cir. 1971), cert. denied, 404 U.S. 1059, 92 S.Ct. 739, 30 L.Ed.2d 746 (1972); Pennalunna & Co. v. Securities & Exchange Commission, 410 F.2d 861, 870 (9th Cir. 1969), cert. denied, 396 U.S. 1007, 90 S.Ct. 562, 24 L.Ed.2d 499 (1970). This is asserted to be the case even if the ground involves an alleged infringement of the right of due process under the Fifth Amendment. Gilligan, Will & Co. v. Securities & Exchange Commission, 267 F.2d 461, 468 (2d Cir.), cert. denied, 361 U.S. 896, 80 S.Ct. 200, 4 L.Ed.2d 152 (1959). However, appellant quotes a dictum from the opinion in Califano v. Sanders, supra, at 109, 97 S.Ct. at 986, in arguing to the contrary:
Constitutional questions obviously are unsuited to resolution in administrative hearing procedures and, therefore, access to the courts is essential to the decision of such questions. . . . [Wjhen constitutional questions are in issue, the availability of judicial review is presumed, and we will not read a statutory scheme to take the “extraordinary” step of foreclosing jurisdiction unless Congress’ intent to do so is manifested by “ ‘clear and convincing’ ” evidence. [Citing Weinberger v. Salfi, 422 U.S. 749, 762, 95 S.Ct. 2457, 2465, 45 L.Ed.2d 522, 536, 537 (1975).]
Even if we were to accept appellant’s premise that extraordinary circumstances demand consideration of his constitutional argument by this court, we have already concluded that there was more than a sufficient basis for the SEC’s determination that the public interest required the NYSE sanction to remain in effect. See Berdahl v. Securities & Exchange Commission, 572 F.2d 643 (8th Cir. 1978). Grounds other than constitutional ones are, of course, clearly barred from our consideration if not raised below.
In No. 77-2208, the order of the district court dismissing appellant’s action is affirmed. In No. 78-1022, appellant’s petition to this court is dismissed. '

. For lack of subject matter jurisdiction, “because of the limitation of Section 25(a)(1) [of the Securities Exchange Act].” See note 3, infra.

. An “emergency petition,” filed January 17, 1978, under section 25(c)(2) of the Act for “necessary and appropriate process” was denied by this court on February 3, 1978.

. 15 U.S.C. § 78y(a)(l), which is section 25(a)(1) of the Securities Exchange Act, provides:
A person aggrieved by a final order of the Commission entered pursuant to this chapter may obtain review of the order in the United States Court of Appeals for the circuit in which he resides or has his principal place of business, or for the District of Columbia Circuit, by filing in such court, within sixty days after the entry of the order, a written petition requesting that the order be modified or set aside in whole or in part.

. 15 U.S.C. § 78s(d)(2), which is section 19(d)(2) of the Securities Exchange Act, provides in pertinent part:
Any action with respect to which a self-regulatory organization is required . to file notice shall be subject to review by the appropriate regulatory agency ... on its own motion, or upon application by any person aggrieved thereby filed within thirty days after the date such notice was filed with such appropriate regulatory agency and received by such aggrieved person, or within such longer period as such appropriate regulatory agency may determine. Application to such appropriate regulatory agency for review . . . shall not operate as a stay of such action unless such appropriate regulatory agency otherwise orders, summarily or after notice and opportunity for hearing on the question of a stay. . . . Each appropriate regulatory agency shall establish for appropriate cases an expedited procedure for consideration and determination of the question of a stay.

. It is noted that appellant’s defense before the hearing panel of the NYSE was based, in part, on his argument that “ineptitude and gross negligence” and “mismanagement and sloppy practice” of Dean Witter, his employer at the time of the violations, brought about the conditions that tempted him to engage in illegal conduct.

. Appellant argues that, at the time of his petition for stay, he had been “back selling securities to the investing public for 21 months” and that the SEC “knew that not a single complaint had been made” during that period. However, the Government observes that appellant’s accounts during that 21-month period were scrutinized by the vice chairman of the board of directors of Loewi and Co., Inc., and that with this and the pending investigation, appellant would have been foolish to attempt further defalcations.

. 15 U.S.C. § 78y(c)(2), which is section 25(c)(2) of the Securities Exchange Act, provides in pertinent part:
The filing of a petition under this section does not operate as a stay of the Commission’s order or rule. Until the court’s jurisdiction becomes exclusive, the Commission may stay its order or rule pending judicial review if it finds that justice so requires. After the filing of a petition under this section, the court, on whatever conditions may be required and to the extent necessary to prevent irreparable injury, may issue all necessary and appropriate process to stay the order or rule or to preserve status or rights pending its review; but ... no such process may be issued by the court before the filing of the record . . . unless: (A) the Commission has denied a stay or failed to grant requested relief. .

. Appellant also cites Aquavella v. Richardson, 437 F.2d 397, 404-05 (2d Cir. 1971) (“Whether an agency action is final for purposes of the APA should not depend on semantic characterizations but rather on a careful evaluation of the separate but coordinate functions of courts and administrative agencies and of the impact of the challenged action on the parties.”)

. These are: that there is a conflict between Rule 345 of the NYSE and the 1975 amendments; that 15 U.S.C. § 78s(d)(2), supra note 4, as applied here deprives appellant of liberty and property in violation of the Fifth Amendment; and that the NYSE panels failed to apply the standard prescribed by 15 U.S.C. § 78f(c)(3)(B) — practices inconsistent with just and equitable principles of trade and a reasonable likelihood that the person involved will again engage in such practices. As to the latter, we stated earlier our approval of the Government’s position on keeping the NYSE sanction in place. See also note 6, supra.