Arthur L. STOKES, et al., Appellants,

v.

Lawrence LOKKEN and Henson & Tully, a partnership, Appellees.

No. 80–1701.

United States Court of Appeals, Eighth Circuit.

Submitted April 16, 1981.

Decided July 7, 1981.

---

David G. Newhall, James P. McCarthy (argued), Minneapolis, Minn., for Arthur L. Stokes, et al.

James S. Simonson (argued), Susan L. Lentz, Gray, Plant, Mooty, Mooty & Bennett, Minneapolis, Minn., for Lawrence Lokken and Henson & Tully.

Before BRIGHT, HENLEY and ARNOLD, Circuit Judges.

ARNOLD, Circuit Judge.

This is an appeal from the entry of summary judgment by the District Court[1] in favor of Lawrence Lokken, a lawyer, and his former law firm, Henson & Tully (we will refer to these parties in the singular as "Lokken") on claims of negligent misrepresentation and aiding and abetting violations of federal and state securities laws. We affirm.

This action was brought against Continental Financial Corporation, Continental Coin Exchange, and Numisco Sales Company (referred to collectively as "CFC") on February 11, 1975. A class action against the same defendants had been commenced on January 25, 1975. A partial summary judgment was entered against CFC in the class action, based on a holding that CFC sold unregistered securities in violation of the Securities Act of 1933, 15 U.S.C. §§ 77a et seq.[2] Shortly thereafter, Lokken, an attorney for CFC, and Touche, Ross & Co., CFC's accountants, were added as parties to this action and the class action. The plaintiffs in this action alleged that Lokken and Touche, Ross had aided and abetted violations of federal and state securities laws through their dealings with CFC. Some discovery was had, and the deposition of Lokken was filed on May 18, 1977, before further discovery was suspended pending completion of CFC's bankruptcy proceedings. The bankruptcy proceedings were concluded on April 14, 1980, and motions for summary judgment by Lokken and Touche, Ross were filed on June 16, 1980. After a hearing on the motions in which oral arguments were heard, the District Court denied the Touche, Ross motion but granted summary judgment in favor of Lokken on July 3, 1980. So much of the order as dismissed the claim against Lokken was certified under Fed.R.Civ.P. 54(b) for immediate appeal.

Plaintiffs make two separate arguments on appeal. First, they argue that there are genuine issues of material fact, and therefore the entry of summary judgment was improper, as to the claims that Lokken aided and abetted violations of § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5, 17 C.F.R. § 240.-10b–5 (1975), and that Lokken aided and abetted violations of § 5 of the Securities

1. The Honorable Edward J. Devitt, Chief Judge, United States District Court for the District of Minnesota.

2. That case is reported as *Jenson v. Continental Fin. Corp.*, 404 F.Supp. 792 (D.Minn.1975).

Act of 1933, 15 U.S.C. § 77e. Second, we are told that summary judgment was improper as to certain claims under the Minnesota Securities Act and allegations based on common-law negligence and misrepresentation. For the reasons set out below, we reject both arguments.

*FACTS*

CFC was engaged in the marketing of precious metals, including the sale of gold and silver on margin accounts. The specifics of CFC's marketing practices were examined by the District Court in *Jenson v. Continental Fin. Corp., supra,* and the margin transactions were held to constitute the sale of securities. This holding is not questioned by any of the parties to this appeal, and we accept it for present purposes.

Lokken's involvement with this suit arises out of CFC's request that Touche, Ross undertake an audit of CFC for the fiscal year ending August 31, 1973. In the course of conducting this audit, Touche, Ross sent a standard auditor's letter to Henson & Tully, because the firm had previously done some legal work for CFC. In response to this request Lokken sent a letter dated September 14, 1973, which noted the possibility of securities-law claims relating to the margin transactions, but gave the opinion that the margin transactions did not amount to the sale of securities. The relevant portion of the letter reads as follows:

> Continental Coin Exchange Inc. sells coins in bulk in transactions which conceivably could be characterized as sales of securities and hence made in violation of federal and state securities laws. If the sales do constitute sales of a security, substantial liabilities to customers could arise. It is our opinion that the sales in question do not involve the sale of a security.

Although Lokken had previously performed some services of a limited nature for CFC, only the conduct associated with the September 14, 1973, letter is alleged to be in violation of the securities laws. Lokken had no further involvement with any CFC concerns.

Some time after the Touche, Ross audit was completed, CFC compiled an advertising brochure, entitled "The Silver Book." The Silver Book extolled the virtues of investing in silver through CFC and presented information about CFC's financial condition, including a reference to a favorable Touche, Ross audit opinion. The Silver Book made no mention of Lokken, nor is there any specific indication in the record that Lokken had reason to know that the Touche, Ross audit would be reproduced in advertising literature.

*ANALYSIS*

■ When reviewing the entry of a summary judgment, the appellate court applies the same standard as the trial court. Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment may be granted

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

In addition, all facts must be viewed in the light most favorable to the parties opposing the motion, in this case appellants, and they must be given the benefit of all reasonable inferences. *Vette Co. v. Aetna Cas. & Sur. Co.,* 612 F.2d 1076, 1077 (8th Cir. 1980).

*Alleged Aiding and Abetting of Violations of § 10(b) and Rule 10b–5.*

■ The courts of appeals have formulated a three-part test that must be met before aiding and abetting liability is imposed. If proof of any part is lacking, there can be no liability. The three prerequisites are:

> (1) the existence of a securities law violation by the primary party (as opposed to the aiding and abetting party);
>
> (2) "knowledge" of the violation on the part of the aider and abettor; and

(3) "substantial assistance" by the aider and abettor in the achievement of the primary violation.

See *IIT, An International Investment Trust v. Cornfeld*, 619 F.2d 909, 922 (2d Cir. 1980); *Monsen v. Consolidated Dressed Beef Co.*, 579 F.2d 793, 799 (3d Cir.) *cert. denied*, 439 U.S. 930, 99 S.Ct. 318, 58 L.Ed.2d 323 (1978); *Woodward v. Metro Bank of Dallas*, 522 F.2d 84, 94–97 (5th Cir. 1975). As was said in *Cornfeld, supra*, 619 F.2d at 922, the three-part test has become commonplace, but the exact content of the three parts "is still being delineated by the courts." Nor should the three parts "be considered in isolation from one another." *Ibid.*

(1) *The Primary Violation.* There is no dispute that the first element has been satisfied. The court in *Jenson* found that CFC violated the federal securities laws, and that finding is not in controversy on this appeal.

(2) *Knowledge of the Violation.* The Supreme Court in *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193, 96 S.Ct. 1375, 1381, 47 L.Ed.2d 668 (1976), held that a finding of scienter—intent to deceive, manipulate, or defraud—is a prerequisite to § 10(b) liability. *Hochfelder* clearly eliminates negligence as a possible basis for a finding of liability, but leaves open the question whether recklessness could be sufficient under certain circumstances. *Id.* at 193–94 n.12, 96 S.Ct. at 1381 n.12.

Since *Hochfelder*, the courts of appeals have generally concluded that recklessness, in some form, can satisfy the scienter requirement. *Edward J. Mawod & Co. v. SEC*, 591 F.2d 588, 596 (10th Cir. 1979); *Rolf v. Blyth, Eastman Dillon & Co.*, 570 F.2d 38, 44 (2d Cir.), *cert. denied*, 439 U.S. 1039, 99 S.Ct. 642, 58 L.Ed.2d 698 (1978); *Nelson v. Serwold*, 576 F.2d 1332, 1338 (9th Cir.), *cert. denied*, 439 U.S. 970, 99 S.Ct. 464, 58 L.Ed.2d 431 (1978); *Sundstrand Corp. v. Sun Chemical Corp.*, 553 F.2d 1033, 1045 (7th Cir.), *cert. denied*, 434 U.S. 875, 98 S.Ct. 224, 54 L.Ed.2d 155 (1977). This Court has not yet decided what degree of knowledge will satisfy the scienter requirement. In the analogous case of *Berdahl v. Securities and Exchange Commission*, 572 F.2d 643 (8th Cir. 1978), however, we affirmed action taken in a disciplinary proceeding based on conduct we considered to be "at the very least . . . grossly reckless." *Id.* at 647 n.6. We do not believe it necessary in this opinion to canvass the matter fully and announce a comprehensive standard adequate to govern all cases. For here the actor's conduct falls short of any reasonable formulation of the requisite legal standard.

■ A brief review of the allegations and evidence submitted to the District Court makes clear that Lokken did not act with the quality of intent required to sustain civil liability. As corporate counsel Lokken incorporated CFC, drafted some agreements, and advised CFC, in a limited way, on its corporate activities. Then, after receiving a st..ndard auditor's request, Lokken responded with an opinion letter that was based on facts concerning CFC's manner of operations supplied by CFC's President, Richard V. Marteson, and limited legal research conducted in August of 1972 on whether the sale of bags of coins constituted the sale of securities.[3] Appellants allege that Lokken relied on advice he solicited over the phone from a Mr. Sedgwick of the

3. In their brief, appellants argue that Lokken was reckless when he relied on facts supplied by Mr. Marteson as to CFC's manner of operation, because Mr. Marteson was a convicted felon. This argument is without merit. We reject the notion that a corporate officer's personal background, without more, makes it improper for the corporation's attorney to rely on his statements about the nature of the corporate client's business. There may be circumstances when a proper concern for professional ethics should cause a lawyer to question what an officer of the client is telling him. But the issue here is not whether Lokken acted ethically, or even negligently, but whether he acted knowingly (which even plaintiffs do not claim) or with reckless disregard of the correctness *vel non* of the opinion he was giving. In the present case, moreover, we are unable to see anything unethical in Lokken's conduct. To impose a standard of independent factual inquiry in these circumstances would make it unreasonably difficult for clients to obtain expeditious legal advice, or for lawyers to maintain a busy practice.

Minnesota Securities Division to the effect that the margin transactions were not securities. Such reliance is said to be improper, especially in light of the availability of a statutory procedure for the issuance of interpretive opinions by the Commissioner of Securities. See Minnesota Statutes § 80A.26, subd. 5. In essence Lokken's research, both legal and otherwise, that was the basis of his opinion letter is alleged to be so grossly negligent that it amounts to recklessness, thus satisfying the scienter requirement.

■ These allegations still fall short of the state of mind that § 10(b) and Rule 10b–5 require. Language in *Ernst & Ernst v. Hochfelder, supra,* is particularly telling on this point. There the court said:

There is no indication that Congress intended anyone to be made liable [under Rule 10b–5] unless he acted other than in good faith. The catchall provision of § 10(b) should be interpreted no more broadly.

*Id.* 425 U.S. at 206, 98 S.Ct. at 1387. See also *Pegasus Fund, Inc. v. Laraneta,* 617 F.2d 1335, 1340 (9th Cir. 1980). Lokken's conduct in this matter cannot be considered other than in good faith. Indeed, no one claims that he *knew* his legal advice was incorrect. Lokken's opinion letter was a product of good-faith reliance on the facts as he had been given them. Further, Mr. Lokken's opinion was a qualified one, fully noting the possibility that others might disagree, and contingent liabilities result. After the opinion letter was sent, Touche, Ross issued a clean audit report that was later reproduced in The Silver Book. There are, however, no allegations concerning Lokken's knowledge of The Silver Book, nor is Lokken's opinion referred to in the book. Even if fraud was afoot, there is no suggestion that Lokken knew of it, or had any improper motive for not probing more deeply into the nature of CFC operations. Lokken's actions cannot be regarded as so reckless that an inference of bad faith might reasonably be made.

■ (3) *Substantial Assistance.* When proof is lacking on any one part of the three-part test for an aiding-and-abetting violation of § 10(b), there can be no liability. We discuss the proof of substantial assistance only for the purpose of explaining a point made above, although briefly. The point is that the individual parts of the three-part test are not considered in isolation, but rather in relation to one another, especially the elements of scienter and substantial assistance. For example, where there is a minimal showing of substantial assistance, a greater showing of scienter is required. As was said in the case of *Woodward v. Metro Bank of Dallas,* 522 F.2d 84 (5th Cir. 1975):

The scienter requirement scales upward when activity is more remote; therefore, the assistance rendered should be both substantial and knowing.

*Id.* at 95 (footnote omitted). See also *Edwards & Hanly v. Wells Fargo Securities Clearance Corp.,* 602 F.2d 478, 484 (2d Cir. 1979), *cert. denied,* 444 U.S. 1045, 100 S.Ct. 734, 62 L.Ed.2d 731 (1980).

In the present case, the amount of assistance rendered by Lokken is minimal at most. Lokken took no part in the preparation of The Silver Book, nor does the brochure refer to his opinion letter. While Touche, Ross may have relied on the opinion letter to some extent when giving its clean audit report, such reliance is hardly proof of substantial assistance, considering the hedging nature of the opinion and the fact that another attorney, Mr. Efron, also alerted Touche, Ross to the potential securities problem. In short, Lokken's involvement was only tangential. This circumstance strengthens our conviction of the correctness of the District Court's entry of summary judgment on the § 10(b)—Rule 10b–5 aiding-and-abetting claim.

*Aiding and Abetting Violations of § 5 of the Securities Act of 1933.*

■ Appellants next urge a theory of aiding and abetting liability under § 5 of the 1933 Act, 15 U.S.C. § 77e, which sets out registration requirements for securities. Appellants further argue that scienter need not be proved in order to establish a violation under § 5. While this is true, it is of

little relevance. In a suit for damages, liability is imposed under § 12 of the Act, 15 U.S.C. § 77*l*, on persons who offer or sell securities in violation of § 5. Thus the conduct of the alleged aider or abetter must somehow bring him within the purview of § 12, which by its very language applies only to sellers. We do not propose to enter into an involved discussion of the outer limits of sellers' liability. Suffice it to say that the term "seller," for purposes of determining § 12 liability, is not limited to one who actually transfers title, *Pharo v. Smith,* 621 F.2d 656, 665 (5th Cir. 1980),[4] but *is* limited to one who is in privity with the purchaser or one whose participation in the buy-sell transaction is a substantial factor in causing the transaction to take place. *Id.* at 667.

■ Lokken was not in privity with any of the purchasers. Equally clear is the fact that Lokken's opinion letter was not a substantial factor in causing the ultimate sales to take place. Lokken was two steps removed from the sale: his opinion letter informed Touche, Ross of the contingent-liabilities problem; Touche, Ross issued a clean audit report; and finally CFC made the independent decision to include the Touche, Ross audit report in its advertising materials. This chain of circumstances does not approach the degree of participation required for liability under § 12. There being no genuine issues of fact as to the § 5 and § 12 claims, the District Court's entry of summary judgment was correct.

*Claims Based on State Law.*

■ In addition to the federal statutory claims, appellants made several claims under the Minnesota Securities Act, Minn. Stat. § 80A.01 *et seq.*, and the common law of misrepresentation and negligence. The District Court's order does not mention the state-law claims explicitly, but it is clear that it intended to dismiss all claims against Lokken. Jurisdiction of the state-law claims was pendent only, however, and when federal claims are dismissed before trial, the normal practice is to dismiss pen-

dent claims without prejudice, thus leaving plaintiffs free to pursue their state-law claims in the state courts, if they wish. Such a procedure is proper here. We construe the order of the District Court to be a dismissal of the state-law claims without prejudice, and the order, as so construed, will be upheld. *Pharo v. Smith, supra,* 621 F.2d at 674–75.

The judgment is affirmed.

---

4. A petition for rehearing was granted in part on a different issue, and the cause was remanded to the District Court. See *Pharo v. Smith,* 625 F.2d 1226 (5th Cir. 1980).