**546**

Ed LIGON, Charles Robertson, Richard
Toll, Herb Jones, Kenneth R. Meacham,
Joe B. Colclasure, Daryl E. Coker,
James 'A. Bottin, James T. Phelan,
George Morledge, III, William F. Hayden,
Donald A. Ashcraft, Samuel B.
Bracy, Earl Peeples, Appellants,

v.

DELOITTE, HASKINS &
SELLS, Appellee,

Shari Robertson, Jones Brothers Datsun–
Isuzu, Inc., d/b/a Jones Toyota Volvo,
d/b/a Jones Brothers Nissan and Toyota
of Little Rock, Inc., Appellants,

Deloitte & Touche, Successor
to Deloitte, Haskins &
Sells, Appellee.

No. 91–1687.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 14, 1991.

Decided Feb. 21, 1992.

Clark Wharton Mason, Little Rock, Ark.,
argued (Gary P. Barket, on brief), for appellants.

A. Gene Williams, Little Rock, Ark., argued
(Overton S. Anderson, on brief), for
appellee.

Before BOWMAN, Circuit Judge,
HENLEY, Senior Circuit Judge, and
BEAM, Circuit Judge.

BEAM, Circuit Judge.

Ed Ligon and thirteen others ("Limited
Partners"), limited partners in the Turtle
Creek Apartments Limited Partnership,
sued Deloitte, Haskins & Sells,[1] an accounting
firm, alleging that it aided and abetted
a violation of section 10(b) and Rule 10b–5
of the Securities Exchange Act of 1934. 15
U.S.C. § 78j(b) (1988); 17 C.F.R. § 240.10b–
5 (1991). After a trial, the jury returned a
verdict in favor of Deloitte. The Limited
Partners appeal claiming that the court
improperly used a "conscious intent" standard
to satisfy the knowledge prong of

---

1. Deloitte, Haskins & Sells is now known as    Deloitte & Touche.

aiding and abetting liability, that the district court improperly excluded testimony by their expert concerning damages suffered, and that the court improperly instructed the jury that the primary violator's fraudulent net worth representation could only be considered in connection with the operating guarantees he made. We affirm.

## I. BACKGROUND

The Turtle Creek Partnership was formed to acquire and operate the Turtle Creek Apartments, a 216–unit complex located in west Little Rock, Arkansas. Interests in the Turtle Creek Partnership were offered for sale via a Confidential Private Placement Memorandum ("PPM") to high income individuals.[2] Included in the PPM were initial audit and financial projections for the Turtle Creek Apartments, which were prepared by Deloitte. Jon R. Brittenum, the managing general partner and offeror of the Turtle Creek Partnership, hired Deloitte to prepare these projections and to serve as independent accountants for the Turtle Creek Partnership.

At trial, the Limited Partners allege that while serving as the accountants for the Turtle Creek Partnership, Deloitte was aware of material misrepresentations and omissions in the PPM. Specifically, the Limited Partners claim Deloitte knew that the managing partner and offeror of Turtle Creek, Brittenum, was misrepresenting his net worth as being in excess of $5 million, and that Deloitte knew he would not be able to meet operating guarantees of $804,-000 for each of the first two years of operation.

By special interrogatories, the jury found, *inter alia*, that Brittenum knowingly misrepresented his net worth, that his net worth statement was material to the Limited Partners, and that Deloitte knew Brittenum's net worth was not in excess of $5 million. The jury found, however, that the Limited Partners failed to prove re-liance on Brittenum's net worth representation and that Brittenum lacked knowledge that he would be unable to meet his operating guarantees. Consequently, the jury returned a verdict for Deloitte.

## II. DISCUSSION

■ A primary violation is a *sine qua non* for aiding and abetting liability; without a primary violation, an aiding and abetting claim fails. *Stokes v. Lokken,* 644 F.2d 779, 782 (8th Cir.1981). Under section 10b and Rule 10b–5 of the 1934 Securities Exchange Act, a primary violation occurs when:

1) the primary violator acted in a manner prohibited by rule in connection with the purchase or sale of securities;

2) the primary violator acted with scienter;

3) the wrongful act or omission was material and plaintiffs relied on the act or omission; and

4) the plaintiffs were damaged by their reliance.

*Harris v. Union Elec. Co.,* 787 F.2d 355, 362 (8th Cir.1986).

Thus, before Deloitte could be held liable for aiding and abetting, the Limited Partners first had to establish that Brittenum committed a primary violation. Although the jury in this case found that Brittenum made false statements in connection with the sale of the Turtle Creek Partnership, not every false or misleading statement or dishonest act made in connection with the sale of securities leads to an injury cognizable by the securities laws. *Cf. Basic Inc. v. Levinson,* 485 U.S. 224, 238, 108 S.Ct. 978, 986, 99 L.Ed.2d 194 (1988) (discussing materiality and stating that a false or incomplete statement is not material if it is insignificant).

■ Here, the jury found that Brittenum lied concerning his net worth with the intent to deceive the Limited Partners. The

---

**2.** A Private Placement Memorandum is used when securities exempt from registration pursuant to section 4(2) of the 1933 Securities Exchange Act are offered for sale. *See* 15 U.S.C. § 77d(2) (1988); 17 C.F.R. § 230.152 (1991).

The information included in a PPM is similar to that included in a prospectus for a nonexempt offering. *Compare* 17 C.F.R. § 230.502(b)(2)(C) (1991) *with id.* §§ 229.501–502.

jury also determined, however, that the Limited Partners did not rely on Brittenum's net worth representation in deciding to make their investments in the Turtle Creek Partnership. For this reason, the 10b and 10b–5 primary violation fails. *See Harris*, 787 F.2d at 362.

The Limited Partners do not argue that an instruction on reliance was error. Instead, they argue that the judge improperly limited the jury's consideration of reliance by instructing it that Brittenum's net worth representation could only be considered in connection with the operating guarantees he made. According to the Limited Partners, the net worth representation was significant even without the $804,000 two-year operating guarantees because a financially strong general partner increased the viability of a partnership. This argument is fallacious. Because Brittenum's financial resources were only available to the Turtle Creek Partnership to the extent of the operating guarantees, the Limited Partners could not justifiably rely on his net worth absent those guarantees. Moreover, the jury found that at the time Brittenum made the operating guarantees, he was unaware he would be unable to satisfy them. This finding eliminates the scienter requirement necessary in section 10b and Rule 10b–5 violations. *See Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193, 96 S.Ct. 1375, 1380, 47 L.Ed.2d 668 (1976).

The Limited Partners also claim that they relied on Brittenum's net worth representation as bespeaking a successful background and track record that they believed reduced their investment risk. The PPM, however, contained eighteen pages outlining the investment risks. Each investor is deemed to have read and considered these risks before investing, *Zobrist v. Coal–X, Inc.*, 708 F.2d 1511, 1518 (10th Cir.1983), and these risks could not be modified by the subjective belief of the Limited Partners concerning Brittenum's "successful background and track record" absent affirmative statements to the contrary.

The Limited Partners urge us to use this case as an occasion to set forth standards for professionals such as Deloitte. Several of our cases have attempted to define the contours of what are often amorphous standards for professionals involved in securities offerings. *See, e.g., Camp v. Dema*, 948 F.2d 455, 463–64 (8th Cir.1991); *Arthur Young & Co. v. Reves*, 937 F.2d 1310, 1329–31 (8th Cir.1991). This is not the proper case to further refine those contours.

## III. CONCLUSION

Because of our holding above, it is unnecessary to consider the other issues on appeal. The judgment of the district court is affirmed.