**Maurice DAHL, Gary Clark, W. Grantham, Robert Daniele, Charles Dahl, Dowayne Bockman, Ray Dilbeck, Richard Koon, Art Overgarrd, Jack Yeager, Accra Tronics Seals Corp., and Aaron Heller, Plaintiffs-Appellees,**

v.

**Billy J. "B.J." PINTER, Black Gold Oil Company, Pinter Energy Company, and Pinter Oil Company, Defendants-Appellants.**

No. 84–1970.

United States Court of Appeals,
Fifth Circuit.

July 21, 1986.

Braden W. Sparks, Newman, Shook & McManemin, Dallas, Tex., for defendants-appellants.

· John A. Spinuzzi, Denton, Tex., for plaintiffs-appellees.

Before BROWN, REAVLEY, and HILL, Circuit Judges.

## ON PETITION FOR REHEARING AND SUGGESTION FOR REHEARING EN BANC

PER CURIAM:

A member of the Court in active service having requested a poll on the reconsideration of this cause en banc, and a majority of the judges in active service not having voted in favor of it, rehearing en banc is denied.

Before CLARK, Chief Judge, GEE, RUBIN, REAVLEY, POLITZ, RANDALL, JOHNSON, WILLIAMS, GARWOOD, JOLLY, HIGGINBOTHAM, DAVIS, HILL, and JONES, Circuit Judges.

EDITH H. JONES, Circuit Judge, with whom CLARK, Chief Judge, GEE, JOLLY, HIGGINBOTHAM, and DAVIS, Circuit Judges, join, dissenting from denial of rehearing en banc:

I must respectfully dissent from the Court's decision denying rehearing en banc. I do not agree that the panel majority and Judge Brown's dissent differ only in application of settled law to the facts. Quite the contrary, the chasm between the majority and dissenting opinions is strictly one of law.

First, the majority opinion changes the law regarding the definition of a "seller" of securities. The long-standing Fifth Circuit test for identifying a "seller" under the 1933 Act is whether the alleged seller's conduct was a "substantial factor" in causing the purchase. *See Hill York Corp. v. American International Franchises, Inc.,* 448 F.2d 680 (5th Cir.1971); *Lewis v. Walston & Co., Inc.,* 487 F.2d 617 (5th Cir. 1973). This Court's seminal decisions in

---

*Hill York* and *Lewis* have been widely cited and followed by other circuits. *See, e.g., S.E.C. v. Murphy,* 626 F.2d 633 (9th Cir.1980); *Stokes v. Lokken,* 644 F.2d 779 (8th Cir.1981); *Davis v. Avco Financial Services, Inc.,* 739 F.2d 1057 (6th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 1359, 84 L.Ed.2d 381 (1985). The panel majority specifically found that Dahl met the "substantial factor" test, yet declined to hold that he was a "seller," because, according to the majority, Dahl had no expectation of financial benefit. Until this opinion, expectation of financial benefit played no role—express or implied—in the determination of "seller" status. According to the majority, the test is no longer "substantial factor" but "substantial factor *plus* expectation of financial benefit." As Judge Brown stated in his dissent, this new restriction has absolutely no foundation in either settled securities law or its underlying policies.

I sympathize with the panel's evident concern regarding an overly broad definition of "seller" lest a cocktail conversation should lead to unwarranted liability under section 12(1) of the 1933 Act. Dahl, however, was performing a role far more significant than that of "happy hour investment advisor." The policy behind the "substantial factor" test, unadulterated by the majority's gloss, is fully satisfied by holding Dahl to be a "seller." We need not speculate, therefore, on how a true cocktail conversationalist might defend himself consistent with that test.

The second major divergence between the majority opinion and the dissent is also purely one of law. The majority declines to apply a recent Supreme Court case which, in the context of a private cause of action for a securities violation, fashions an explicit test for allowance of the *in pari delicto* defense. *See B. Eichler, H. Richard v. Berner,* 472 U.S. ——, 105 S.Ct. 2622, 86 L.Ed.2d 215 (1985). Rather, the majority ruled that the disposition of the *in pari delicto* issue raised on this appeal was controlled by a venerable Fifth Circuit case which, as correctly pointed out by the dissent, does not even discuss the *in pari delicto* defense. The majority's confusion regarding the controlling principles of law is evident in its hapless attempt to distinguish *Eichler* on the grounds that the *Eichler* test "mirrors the classic formulation of the *in pari delicto* doctrine." Finally, the majority apparently suggests that *Eichler* should be confined to section 10(b) actions. *Eichler* does not remotely suggest such a result. In fact, it was conceded in *Eichler* that the *in pari delicto* defense should be available when Congress expressly provides for private remedies (e.g., actions under the 1933 Securities Act); the issue for decision was whether the defense should be unavailable when the private cause of action is implied (e.g., a Rule 10b–5 action). The Supreme Court rejected this distinction, ruling that the *in pari delicto* doctrine applies to implied causes of action under the federal securities laws as well as to private causes of action expressly provided for by Congress. 105 S.Ct. at 2628, 86 L.Ed.2d at 223–24. Thus, any reasonable reading of *Eichler* indicates that its formulation of the *in pari delicto* defense applies to actions instituted under the '33 Act as well as actions brought pursuant to 10b–5.

In sum, the panel majority has erred in its choice of controlling legal principles rather than its application of settled law to the facts. The practical implication of its error is obvious. A fence-straddler, such as Dahl, can promote and participate in an illegal sale of unregistered securities and, if the investment does not pay off, turn around and sue the issuer to recover his investment. This lamentable result may actually encourage future violations, thereby thwarting federal securities policy. Finally, in light of the panel majority's cloudy discussion of the *in pari delicto* doctrine, I am left wondering about the doctrine's current place in this Circuit's law. Are we really holding that the *Eichler* formulation of the *in pari delicto* doctrine does not apply to actions arising under the 1933 Act? Do we have any valid rationale for doing so? If not, on what basis are we to decide whether to apply *Eichler* in future cases? Reshaping the law in order to

reach a predetermined desired outcome has created an ill-conceived precedent on two significant legal issues affecting securities litigation. Believing that it is our duty to refrain from such reshaping and to follow the obvious lead of the Supreme Court in *Eichler*, I dissent from the Court's denial of rehearing en banc.