United States Court of Appeals
FOR THE EIGHTH CIRCUIT

_____

No. 96-3293

_____

Everest Securities, Inc.;          *
Jeanne Alyce Kunkel,               *
                                   *
          Petitioners,             *
                                   *
     v.                            *
                                   *
Securities and Exchange Commission, *
                                   *
          Respondent.              *

_____

No. 96-3737

_____

Jeanne Alyce Kunkel,               *
                                   *
          Petitioner,              *
                                   *
     v.                            *
                                   *
Securities and Exchange Commission, *
                                   *
          Respondent.              *

Petition for Review of an
Order of the Securities and
Exchange Commission.

_____

Submitted:  March 12, 1997

Filed:  June 26, 1997

_____

Before WOLLMAN and BEAM, Circuit Judges, and LAUGHREY,[1] District Judge.
_____

WOLLMAN, Circuit Judge.

Everest Securities, Inc. (Everest) and Jeanne Alyce Kunkel petition for review of a Securities and Exchange Commission (Commission) order affirming disciplinary action taken against Everest and Kunkel by the National Association of Securities Dealers, Inc. (NASD) for violating Article III, Sections 1, 18, and 21 of the NASD's Rules of Fair Practice (Rules). We affirm in part and vacate in part.

**I.**

Everest is a general securities broker-dealer that became a registered member of the NASD in December of 1991 and began business on January 31, 1992. Kunkel was the President, Financial and Operations Principal, and registered representative for Everest. G.E.D. International, Inc. (GED) sought to purchase Midwest Tire Service, Inc. (Midwest Tire), a business that would collect, process, and dispose of waste tires, and later sell the tire-derived product as fuel, and planned a private stock offering in order to fund the acquisition and capitalization of Midwest Tire. On February 5, 1992, Kunkel, on behalf of Everest, entered into an agreement with GED whereby Everest agreed to provide "financial advisory and investment banking services to [GED] in connection with a proposed private placement (up to $45,000) and subsequent public offering (up to $4,950,000) of [GED's] Common Stock." Everest was to act as exclusive selling agent for the private placement, in exchange for which it would receive five percent of the aggregate proceeds, in addition to an expense allowance of $13,500 and a nonrefundable banking fee of $11,500.

---

[1]The HONORABLE NANETTE K. LAUGHREY, United States District Judge for the Eastern and Western Districts of Missouri, sitting by designation.

On February 11, 1992, GED provided Everest with an offering memorandum stating that GED had been organized in 1988 for the purpose of operating a medical waste disposal facility in Watkins, Minnesota, and that GED owned a five-acre unimproved site in Watkins on which it planned to build the disposal facility. The memorandum stated that the City of Watkins had already granted preliminary approval for the construction of the facility and that GED was at the time pursuing the issuance of permits from the Minnesota Pollution Control Agency and had engaged a lobbyist to seek changes in state laws and regulations in order to allow the project to proceed.

The memorandum also stated that the offering was a ninety-day, best efforts offering of up to 600,000 shares at $.75 per share, with a minimum purchase of 20,000 shares. The memorandum stated that the proceeds from the sale would be used to fund the acquisition and capitalization of Midwest Tire. Although the combined business of GED and Midwest Tire would focus primarily on development of the waste tire operation, the memorandum stated that GED would also continue to pursue permits for its medical waste incineration business.

The memorandum cautioned that the shares offered were "highly speculative, involve a high degree of risk and may not be appropriate for investors who cannot afford to lose their entire investment," and that prospective buyers should carefully consider a number of risk factors, among which was the warning that "[t]here can be no assurance that [GED] or [Midwest Tire] will be able to operate profitably in the future," and that "[GED] and [Midwest Tire] face all the risks inherent in a new business." In addition, the memorandum stated that GED would possibly have to seek additional financing in the future and that there were no guarantees that additional financing would be available. The memorandum also provided limited financial data on GED and Midwest Tire, indicating that GED had $547,501 in assets, $546,500 of which represented the investment in the medical waste disposal facility.

Prior to distributing the memorandum to investors, Everest agreed to conduct a due diligence investigation of GED and hired Andolshek Management Group, Inc. (Andolshek) for that purpose. The investigation commenced in late February of 1992, was completed on March 26, 1992, and noted only three observations:

> 1. Production cost must be closely watched, with budget and job costing procedures put into place. 2. Sales prices may need to be adjusted to increase gross margins. 3. Hiring of a Chief Financial Officer should be given top priority, this would take some of the load off of Pat Hart and focus the needed attention on financial needs of the company while allowing Pat the time for sales and marketing.

Between February 11, 1992, and April 15, 1992, twenty-three people invested money in GED stock in twenty-four transactions. All 600,000 shares of GED's stock were ultimately sold, and a closing of the GED stock offering took place on April 9, 1992.

On April 22, 1993, the NASD District Business Conduct Committee (District Committee) filed a complaint alleging four causes.[2] The first cause charged that Everest and Kunkel violated Article III, Sections 1 and 18 of the Rules by distributing offering materials which misrepresented the financial condition and status of GED's investment in the proposed medical waste facility and which failed to disclose that an

---

[2]The NASD also filed a second complaint alleging two causes: that Everest, Monica Kimpling, Richard Andolshek, and Marc Eitzen conducted a securities business without adequate minimum required net capital, in violation of Article III, Section 1 of the Rules, and that they violated Article III, Sections 1 and 21 of the Rules by failing to accurately prepare and maintain certain books and records. The District Committee sustained the allegations against Everest and Kimpling in both causes of the second complaint, but dismissed those charges against the other named parties. A joint and several fine of $2500 was imposed against Everest and Kimpling for the violations in the second complaint. The District Committee also assessed costs of $2868.10 against Everest. None of these findings are at issue in this appeal.

executive of GED had had previous complaints filed against him by the Commission. The second cause charged that Everest and Kunkel allowed one of Everest's employees to function as a representative prior to his registration with the NASD, in violation of Article III, Section 1 of the Rules. The third cause alleged that Everest and Monica Kimpling (not a party to this proceeding) failed to maintain adequate minimum required net capital, in violation of Article III, Section 1 of the Rules. The fourth cause alleged that Everest, Kunkel, and Kimpling failed to prepare and maintain certain books and records in an accurate and/or timely manner and that Everest and Kunkel failed to prepare and maintain adequate customer new account information, in violation of Article III, Sections 1, 2, and 21 of the Rules.

With respect to the first cause, the District Committee found that Everest and Kunkel violated Sections 1 and 18 of the Rules by misrepresenting the financial condition and status of GED's investment in the proposed medical waste facility and violated Section 1 of the Rules by failing to disclose that one of GED's executives had previously been disciplined by the Commission. The District Committee also sustained the allegations in causes two and three. As to the fourth cause, the District Committee found that Everest and Kunkel failed to maintain adequate new customer account information, in violation of Sections 1 and 21, but dismissed the other allegations.

The District Committee imposed a joint and several fine of $15,000 against Everest and Kunkel, specifying that $5000 was attributable to the first cause, $5000 to the second cause, and $5000 to the fourth cause. The District Committee also ordered Everest and Kunkel to make restitution of $22,500 in commissions they had earned on the GED offering and suspended Kunkel for five days from associating with any NASD member firm.

Everest and Kunkel appealed the District Committee's decision to the NASD's National Business Conduct Committee (National Committee), which affirmed the District Committee's decision and the monetary sanctions in their entirety. The

National Committee barred Kunkel from acting in any principal capacity and ordered that she requalify as a general securities representative in lieu of her five-day suspension. Everest and Kunkel appealed the National Committee's decision to the Commission, which affirmed the findings that Everest and Kunkel distributed offering materials that contained misrepresentations and that they failed to prepare and maintain adequate new customer account information. The Commission found insufficient evidence to sustain the finding that Everest and Kunkel allowed an Everest employee to function as a representative without first being registered with the NASD. Nevertheless, the Commission affirmed all sanctions against Everest and Kunkel. Everest and Kunkel separately appeal the Commission's decision and sanctions.

## II.

We give the Commission's findings conclusive effect if they are supported by substantial evidence on the record as a whole. See Stephen Investment Securities, Inc. v. SEC, 27 F.3d 339, 341 (8th Cir. 1994); 15 U.S.C. § 78y(a)(4).

### A. Misleading Disclosure

The Commission found that Everest and Kunkel violated Sections 1 and 18 of the Rules[3] by using misleading materials in their sale of the GED stocks. In particular, the Commission found that the representations concerning the proposed medical waste facility were misleading because the memorandum failed to disclose that GED had abandoned that project months before the stock offering.

---

[3]Section 1 of the Rules states, "[a] member, in the conduct of his business, shall observe high standards of commercial honor and just and equitable principles of trade." Section 18 provides that "[n]o member shall effect any transaction in, or induce the purchase or sale of, any security by means of any manipulative, deceptive or other fraudulent device or contrivance."

Everest argues that the memorandum provided by GED and distributed by Everest fully informed potential investors of the waste facility inasmuch as the memorandum explained that GED had invested a substantial sum of money in the project, that such a facility was not licensed, and that it could take substantially more time and money to pursue the venture. Everest contends that the potential investors "realized that their entire investment was going to be used for a new prospective venture, completely unrelated to an existing facility that was effectively defunct." In addition, Everest maintains that the information was not misleading because there was no evidence that GED knew that the waste disposal project was worthless nor any evidence that GED at the time of the offering considered the project abandoned.

These assertions however, are contradicted by competent evidence. GED's own prospectus for the publicly offered shares of the combined business of GED and Midwest Tire (renamed National Tire Service) divulged that in the fall of 1991 GED decided to discontinue seeking the necessary permits to operate the medical waste facility and agreed to terminate the partnership which had been established for the purpose of setting up the waste facility. In addition, a December 11, 1992, memorandum of a telephone conversation with the Minnesota Pollution Control Agency stated that the file on the proposed medical waste disposal project was a dead file and had been inactive for over a year. Also disclosed in the prospectus, but not in the memorandum, was that in July of 1992 GED agreed to pay $247,150 for accounts payable in connection with the dissolution of waste facility partnership. Also undisclosed was that as of October 16, 1991, ENDECO, Inc., a company with whom GED was working on the waste facility, considered GED to have breached their agreement and informed GED on that date that GED owed it over $180,000, as well as $60,000 in unreimbursed costs sustained by ENDECO.

It is true that the memorandum explained the financial difficulties attendant upon establishing the waste facility. Given GED's actual intentions with regard to the facility, however, that information was not only irrelevant but also deceptive, as those

statements could lead investors to believe that plans for the facility were still underway. What was relevant and what should have been disclosed to potential investors was that the purpose for which GED was established -- operating a medical waste disposal facility -- was no longer being pursued and that a number of costs and liabilities had been incurred. Accordingly, we conclude that substantial evidence supports the Commission's finding that it was deceptive to not disclose those facts to the investors and therefore violative of Sections 1 and 18 of the Rules.

Everest argues that even if its actions were deceptive, it did not act with scienter because its actions were neither reckless nor intentional in light of its timely and adequate due diligence investigation. We disagree. Everest's investigation of GED did not commence until late February of 1992, after the memorandum had been distributed and after a number of investors had already committed substantial funds toward purchasing the securities. The investigation was not completed until March 26, 1992, after twenty-two of the twenty-four investments had already been made. Furthermore, the investigation that was performed was itself insufficient, for even a cursory investigation would have disclosed that the waste facility plan had been abandoned and that GED had incurred losses and liabilities as a result.

Everest and Kunkel argue, however, that they properly relied on the information contained in the memorandum because it was provided to them by GED and their attorneys. This argument is unpersuasive, for reliance on others does not excuse Everest's and Kunkel's own lack of investigation. See Sorrell v. SEC, 679 F.2d 1323, 1327 (9th Cir. 1982) (broker's reliance on attorney's advice did not excuse lack of investigation); Hanly v. SEC, 415 F.2d 589, 597 (2d Cir. 1969) ("A salesman may not rely blindly upon the issuer for information concerning a company."). We conclude, therefore, that substantial evidence exists to sustain the Commission's finding that Everest's and Kunkel's dilatory and remiss investigation, and their resultant failure to discover relevant information about the securities they were selling, amounted to recklessness sufficient to establish the requisite scienter.

Everest and Kunkel argue that even if the memorandum was misleading, it was not "materially misleading." We disagree, for we find no fault with the Commission's conclusion that:

> It would be material to an investor to know that the offering company's existing project had been abandoned, that none of its asset value was to be recouped, and that the project was actually worth less than nothing, because the surviving merged company would be left with partnership liabilities of approximately $273,000. There can be little doubt that reasonable investors would consider such information "actually significant in their deliberations," and therefore material.

Everest's argument that it had less responsibility to the investors because they were sophisticated and experienced is likewise unavailing. Cf. Hanly, 415 F.2d at 596 (the fact that investors may have been sophisticated and knowledgeable did not warrant a less stringent standard of investigation). No level of sophistication or experience would inform the investors that GED had abandoned plans to start a business it professed to undertake or protect the investors from risks associated with that which they did not know.

## B. New Account Records

The Commission also affirmed the National Committee's findings that Everest and Kunkel failed to prepare and maintain adequate customer new account records, in violation of Sections 1 and 21 of the Rules.[4] The Commission found that most of the

---

[4]Section 21 of the Rules provides in relevant part:

(a) Each member [of NASD] shall keep and preserve books, accounts, records, memoranda, and correspondence in conformity with all applicable laws, rules, regulations and statements of policy promulgated thereunder and with the rules of this Association.

new account forms were never completed and that those that were had not been completed until after the April 9 closing. Everest contends that before the closing it had obtained all the required information and had made reasonable efforts to obtain all the suggested information and that it could not produce the new account forms in May because Kunkel had sent the forms to the investors for their verifications. Everest's claim that it obtained all the required information, however, is contradicted by the record, for only one of the new account forms indicated the investor's age, information that is required for each investor. In addition, only one of the new account forms contained information regarding the investor's occupation and the name and address of the investor's employer, and only one new account form indicated whether the investor was associated with Everest, information which Everest was required to use

_____

. . . .

(c) Each member shall maintain accounts opened after January 1, 1991 as follows:
> (1) for each account, each member shall maintain the following information:
>> (i) customer's name and residence;
>> (ii) whether customer is of legal age;
>> (iii) signature of the registered representative introducing the account and signature of the member or partner, officer, or manager who accepts the account . . . .
> (2) for each account . . . each member shall also make reasonable efforts to obtain, prior to the settlement of the initial transaction in the account, the following information to the extent it is applicable to the account:
>> (i) customer's tax identification or Social Security number;
>> (ii) occupation of customer and name and address of employer; and
>> (iii) whether customer is an associated person of another member . . . .

reasonable efforts in obtaining. The evidence is therefore sufficient to sustain the Commission's findings that such omissions violated Sections 1 and 21 of the Rules.

## C. Sanctions

"The Commission's determination to impose a particular sanction upon a member of the securities industry will not be reversed unless shown to constitute a gross abuse of discretion." <u>Kane v. SEC</u>, 842 F.2d 194, 201 (8th Cir. 1988). Although the Commission did not find sufficient evidence to sustain the second cause, which alleged that Everest and Kunkel had allowed one of Everest's employees to function as a securities representative, it affirmed the entire sanction after concluding that the "NASD did not indicate how much weight it was giving to each of the three violations . . . ." We find this conclusion to be erroneous.

In imposing a joint and several fine of $15,000 against Everest and Kunkel, the District Committee specifically apportioned $5000 for each of the three violations: "[t]he fine amount . . . has been arrived at as follows: First Cause of Complaint - $5,000; Second Cause of Complaint - $5,000; Fourth Cause of Complaint - $5,000." Accordingly, when the Commission set aside the finding as to the second cause, it likewise should have set aside the portion of the fine imposed for that violation. We conclude that the remaining parts of the sanction are well within the Commission's discretion.

## III.

In her separate pro se brief Kunkel makes a number of general assertions. She argues that the evidence does not support the Commission's findings, that the Commission and the NASD have not been consistent in enforcing the Rules and sanctioning members, and that her attorney was not acting on her behalf because of the conflicts inherent in representing Kunkel, Everest, and Andolshek at the same time.

Having reviewed the record, we find Kunkel's contentions to be without merit and, as explained above, conclude that substantial evidence exists to sustain the Commission's findings.

The Commission's findings are affirmed. The fine for the second cause is vacated; the remaining portions of the sanction are affirmed.

A true copy.


Attest:


CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.