# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 97-3710

_____

Robert D. Potts,                                          *
                                                         *
                    Petitioner,                          *
                                                         *
       v.                                                *
                                                         *
Securities and Exchange Commission,      *      Petition for Review of an Order
                                                         *      of the Securities and Exchange
                    Respondent,                   *      Commission.
_____                            *
                                                         *
American Institute of Certified Public    *
Accountants,                                          *
                                                         *
                    Amicus Curiae.               *

_____

Submitted:  June 8, 1998
Filed:  August 4. 1998

_____

Before FAGG, BRIGHT, and BEAM, Circuit Judges.

_____

FAGG, Circuit Judge.

Robert D. Potts petitions for review of an order of the Securities and Exchange Commission (SEC or the Commission) sustaining the 1994 finding of an administrative law judge (ALJ) that Potts had engaged in improper professional conduct in violation of SEC Rule 2(e)(1).  See 17 C.F.R. § 201.2(e)(1)(ii) (1993).  The ALJ suspended

Potts from practicing before the SEC for eighteen months, a period the SEC cut in half. Because substantial evidence supports the SEC's finding, and because Potts had ample notice of the standards governing his audit duties, we affirm.

On appeal, Potts challenges the SEC's ultimate finding of improper professional conduct. Potts does not, however, dispute the SEC's summary of the underlying facts, and our review of the administrative record has disclosed nothing inconsistent with that summary. We thus draw our statement of the facts from the SEC's thorough opinion. See In re Robert D. Potts, CPA, Accounting and Auditing Enforcement Release No. 964, 7 Fed. Sec. L. Rep. (CCH) ¶ 74,479 (Sept. 24, 1997). Potts was a partner at the accounting firm of Touche Ross and its successor Deloitte & Touche (Touche). He served as the concurring partner for the 1988 and 1989 audits of Kahler Corporation, which owns and manages hotels. This case centers on Kahler's accounting treatment of one of its properties, the University Park Hotel (the Hotel). Throughout 1988 and 1989, Kahler accounted for the Hotel as an asset held for sale. The Hotel lost money both years, but Kahler's accounting treatment allowed Kahler to capitalize those losses --that is, to factor them into the Hotel's carrying value rather than deducting them from current income. As a result, in 1988 Kahler posted a net gain instead of a million-dollar-plus loss, and in 1989 a net loss of $1.8 million instead of $2.8 million. See id. ¶ 74,479, at 63,597-63,599. According to a publication of the American Institute of Certified Public Accountants (AICPA), the role of a concurring partner is to provide a second-level review and thus afford further assurance that the audited company's financial statements conform with generally accepted accounting principles (GAAP) and that the audit measures up to generally accepted auditing standards (GAAS). See id. ¶ 74,479, at 63,597 & n.1. Potts concurred both years in Touche's unqualified audit opinion of Kahler's financial statements. See id. ¶ 74,479, at 63,599.

Under GAAP, certain conditions must be met before a company may account for a property as an asset held for sale. Among other requirements, the company must commit to a formal plan to sell its entire interest in the property, and it must determine

-2-

that the sale of the property will cancel out any unreported operating losses and result in a net gain.  See id. ¶ 74,479, at 63,599-63,600.  In light of these requirements, the SEC found Kahler's accounting treatment of the Hotel improper for four reasons.  First, instead of pursuing an outright sale, Kahler repeatedly sought investors to share ownership of the Hotel with Kahler.  Second, Kahler did not have a formal plan to sell the Hotel.  Third, Kahler's management had no valid basis to conclude the Hotel's selling price would make up for its operating losses.  Fourth, although Kahler's Board of Directors first authorized the sale of the Hotel--actually, of only an interest in the Hotel--in April 1988, Kahler backdated its treatment of the Hotel as an asset held for sale to the beginning of the year.  See id.

The SEC found Potts's conduct as concurring partner on the Kahler audits seriously deficient in several respects.  To begin, Potts approved the Kahler audits despite inadequately explained documentary evidence that Kahler did not intend to sell the Hotel outright.  The 1988 file Potts reviewed showed Kahler's Board of Directors had authorized the sale, not of the Hotel, but of an interest in the Hotel.  Gregory Melsen, the lead partner for the Kahler audits, also showed Potts a contract under which Kahler hired Piper, Jaffray & Hopwood to sell an interest in the Hotel.  On Potts's suggestion, Melsen met with Kahler's internal audit committee, and afterwards Melsen assured Potts that Kahler was committed to a complete sale of the Hotel.  Potts took Melsen's word for it without further investigation.  As it turned out, Melsen was going on nothing more than the audit committee's say-so, without any supporting documentation negating or explaining the contrary evidence.  The 1989 file also contained contradictory evidence of Kahler's intent to sell the Hotel, but Potts again concurred.  See id. ¶ 74,479, at 63,602-63,603.

Further, Potts signed off on the Kahler audits despite signals that the Hotel was worth much less than Kahler said.  For the 1988 audit, the Hotel's value was derived using invalid methods, as Potts himself acknowledged before the ALJ.  For the next year's audit, Kenneth Riggs of Touche's Valuation Office pegged the Hotel's value at

$11.4 million, far below its book value of $16.75 million. When the audit team received Riggs's analysis, it substituted Kahler's higher cash flow projections for the Hotel for Riggs's more conservative projections, which were based on past results, and it took another accounting measure that enhanced the Hotel's valuation. Melsen told Potts these changes were needed to correct errors in Riggs's analysis. Once again, Potts took Melsen's word for it, despite a document in the 1989 file identifying Kahler's aggressive attitude toward accounting as a main source of audit risk. See id. ¶ 74,479, at 63,603-63,604 & n.37. Finally, Potts concurred with Kahler's backdating of the Hotel's accounting treatment. The SEC called Potts's willingness to do so "inexplicable." Id. ¶ 74,479, at 63,604. For these reasons, and because of "the keen significance to [Kahler's] financial statements of [the Hotel's] loss deferrals," the SEC agreed with the ALJ's conclusion that Potts should be suspended for improper professional conduct because he had acted with reckless disregard of his duties as an independent auditor. Id. ¶ 74,479, at 63,604-63,605.

Potts contends the record fails to sustain the SEC's finding of recklessness. That finding is conclusive if supported by substantial evidence on the record as a whole. See Everest Sec., Inc. v. SEC, 116 F.3d 1235, 1238 (8th Cir. 1997); 15 U.S.C. § 78y(a)(4) (1994). To be reckless, Potts's performance had to represent "an extreme departure from the standards of ordinary care, which present[ed] a danger of misleading buyers or sellers that [was] either known to [Potts] or [was] so obvious that [Potts] must have been aware of it." In re Potts, 7 Fed. Sec. L. Rep. (CCH) ¶ 74,479, at 63,604 n.40 (internal quotations omitted). Drawing on an opinion Potts himself cites, the question in this case is whether the record shows Potts's conduct amounted to "an egregious refusal to see the obvious, or to investigate the doubtful." In re Worlds of Wonder Sec. Litig., 35 F.3d 1407, 1426 (9th Cir. 1994) (internal quotations omitted). Kahler's accounting treatment of the Hotel mattered. In 1988 alone, it made all the difference between showing a profit instead of a loss. Despite this evident importance, and despite signals that Kahler's treatment of the Hotel was suspect in two different ways, Potts approved the audits based on Melsen's unprobed, untested representations. Most

glaringly, Potts countenanced Kahler's backdating of the "asset held for sale" treatment to the start of 1988, even though he knew Kahler's Board did not approve any kind of sale until April of that year. From all this, reasonable people could conclude Potts's conduct was reckless. Potts acknowledges the SEC's authority to discipline him for reckless professional misconduct, so we need not address Potts's argument that negligence is insufficient to justify sanctions under SEC Rule 2(e)(1). Cf. Berdahl v. SEC, 572 F.2d 643, 647 (8th Cir. 1978). Similarly, because Potts concedes the Commission may presume a risk of future harm from reckless conduct, the nine-month suspension imposed here was well within the SEC's broad discretion. See Everest, 116 F.3d at 1240.

Potts also contends his suspension violates his due process rights because he did not have adequate notice of the SEC's standards of professional conduct for concurring reviewers. See Stephenson v. Davenport Community Sch. Dist., 110 F.3d 1303, 1308 (8th Cir. 1997); Upton v. SEC, 75 F.3d 92, 98 (2d Cir. 1996). The SEC did not invent new standards in this case. On the contrary, the Commission evaluated Potts's conduct in light of the well-established norms of the accounting profession, collectively referred to as GAAP and GAAS. For example, an auditor's opinion must have a reasonable basis in sufficient evidence. See In re Potts, 7 Fed. Sec. L. Rep. (CCH) ¶ 74,479, at 63,601. An auditor must maintain "an appropriate level of professional skepticism." Id. ¶ 74,479, at 63,606. An auditor who has reason to suspect a material misstatement in the audited company's financial report must extend his or her audit accordingly. See id. ¶ 74,479, at 63,601. The more important the item, or the greater the possibility of material misstatement, the stronger must be the grounds for the auditor's opinion. See id. ¶ 74,479, at 63,601-63,602. These are "standards to which all accountants must adhere, and within Potts'[s] ready understanding." Id. ¶ 74,479, at 63,606. Potts correctly points out neither GAAP nor GAAS require concurring partner review. The major accounting firms themselves require concurring reviews on "SEC engagements," however. Id. ¶ 74,479, at 63,597 n.1. Having taken on the concurring review task, Potts also shouldered the duty to perform that task professionally. Although a

-5-

concurring reviewer is not expected to do the audit all over again, Potts's own expert witness agreed that a concurring partner must evaluate the financial statements and audit in light of GAAP and GAAS. To do so competently, the concurring partner must observe the commonsense principles the SEC applied here. Accordingly, we reject the view put forward by the AICPA that a concurring partner is not an auditor and thus not subject to GAAS.

Further, as the SEC pointed out in its opinion, see id. ¶ 74,479, at 63,606, by 1988 the SEC had issued several opinions and orders specifically addressing concurring partner review (or its equivalent under different names). The opinions show the SEC has consistently evaluated the professional conduct of concurring partners under GAAP and GAAS. See SEC v. Grant Thornton, Accounting and Auditing Enforcement Release No. 118, 36 S.E.C. Docket 1005, 1986 WL 73198, at *3 (Oct. 16, 1986) ("quality control" reviewer is responsible to detect "inconsistencies or errors that . . . might evidence violations of GAAP and GAA[S]"); Stephen O. Wade, 47 S.E.C. 1081, 1092 (1984) ("second partner reviewer" engaged in improper professional conduct by approving financial statements that wrongly deferred losses in violation of GAAP); Lester Witte & Co., 47 S.E.C. 409, 420 (1981) (concurring review "inadequate" because "[i]t failed to discover that the . . . audit engagement had not been conducted in accordance with generally accepted auditing standards"); see also Seidman & Seidman, 48 S.E.C. 310, 331 (1985) (concurring partner must assure that audit workpapers "contain[] sufficient information to support significant accounting, auditing and reporting decisions"). In sum, Potts had a reasonable opportunity to know what the SEC expected of him, so we reject Potts's due process argument.

We affirm the SEC's order.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.